IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
OHIO WESTERN DIVISION AT CINCINNATI

THOMAS LEE MIDKIFF, JR., as Trustee of          :          CASE NO. _18-191_
THE TLMJ REVOCABLE TRUST                        :
7940 Bunnell Hill Road                          :
Springboro, Ohio 45066,                         :
                                                :
both directly and derivatively on behalf of     :
                                                :
HORSECO, INC.                                   :
250 South Main Street                           :
Springboro, Ohio 45066,                         :
                                                :
          Plaintiffs,                           :
                                                :
v.                                              :
                                                :          **VERIFIED COMPLAINT**
THOMAS LUDT                                     :
101 Katelyn Lane                                :          **DEMAND FOR JURY TRIAL**
Nicholasville, Kentucky 40356,                  :
                                                :
JAMES LAMONICA                                  :
1788 Mooreland Drive                            :
Lexington, Kentucky 40502,                      :
                                                :
STUART AIKMAN                                   :
Unit 3 32 Oatlands Esplanade                    :
Runaway Bay, QLD 4217                           :
Australia,                                      :
                                                :
KIN HUI                                         :
72 West Norman Avenue                           :
Arcadia, California 91007,                      :
                                                :
DOM FUDA                                        :
20 Cora Drive                                   :
Cohoes, New York 12047,                         :
                                                :
DAVID KEYES                                     :
1751 Reno Avenue, Suite C6,                     :
Las Vegas, Nevada 89119,                        :
                                                :
                                                :

BRETT SETZER                                      :
300 Delaney Woods Road                            :
Lexington, Kentucky  40356,                       :
                                                  :
KEENELAND ASSOCIATION, INC.                       :
c/o SKO-Lexington Services, LLC                   :
300 West Vine Street, Suite 2100                  :
Lexington, Kentucky  40507,                       :
                                                  :
DUSTIN DIXON                                      :
998 Sugarbush Trail                               :
Lexington, Kentucky  40509,                       :
                                                  :
and                                               :
                                                  :
PRIVATO GROUP LLC                                 :
c/o Henry Lichtenberger, Registered Agent         :
410 S. Rampart Boulevard, Suite 350               :
Las Vegas, Nevada  89145,                         :
                                                  :
          Defendants.                             :

---

Plaintiff Thomas Lee Midkiff, Jr., as Trustee of The TLMJ Revocable Trust, the largest shareholder of Plaintiff Horseco, Inc. ("Horseco" or "Company"), brings this Verified Complaint ("Complaint") directly and, pursuant to Fed. R. Civ. P. 23.1, derivatively on behalf of Horseco, against Defendant Thomas Ludt for breach of contract; and derivatively on behalf of Horseco against Defendants Ludt, James LaMonica, Stuart Aikman, Dom Fuda, Kin Hui, David Keyes, and Brett Setzer (collectively, "Director Defendants") for breach of fiduciary duties; against Defendant Keeneland Association, Inc. ("Keeneland") for aiding and abetting breach of fiduciary duties by the Director Defendants; and against Defendants Ludt, LaMonica, Dustin Dixon and Privato Group LLC (collectively, "RICO Defendants") for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq., and the Ohio Corrupt Practices Act, Ohio Rev. Code § 2923.31, et seq., and states and alleges as follows:

2

## NATURE OF THE COMPLAINT

1.    This case concerns the gross neglect and dereliction of duty of the Director

Defendants in governing Horseco, as well as their selfish pursuit of personal interests over

corporate interests, all to the detriment of the their duties of loyalty to the Company and its

shareholders, creditors, clients, and employees.  For nearly a year, the Director Defendants

ignored declining sales, invisible profit margins, potential legal liability, and pleas of key

employees for better communication and a strategic plan.  After sleep-walking Horseco into a

corner, they are now looting the Company for their own personal gain.  Rather than work for the

betterment of the Company, they have alienated and purged those who raised red flags, and

instead have handed the corporate reigns, including financial data, client information, technical

plans and other valuable intellectual property, to an unknown and unestablished limited liability

company that is affiliated with an individual who was recently sued for working with a felon

convicted of securities fraud to siphon assets from another business.  This lawsuit is necessary to

protect Horseco's remaining assets, as well as the financial investment of its shareholders and

creditors.

## PARTIES, JURISDICTION AND VENUE

2.    Plaintiff Horseco is a Delaware corporation and has its principal place of business

at 250 South Main Street, Springboro, Ohio 45066.

3.    Plaintiff Thomas Lee Midkiff, Jr., as trustee of The TLMJ Revocable Trust, is an

individual who resides at 7940 Bunnell Hill Road, Springboro, Ohio 45066.  Mr. Midkiff is the

sole trustee and sole beneficiary of The TLMJ Revocable Trust.  Until recently, Mr. Midkiff was

the Secretary, Chief Operating Officer and Chief Information Officer for the Company. On March 19, 2018, Mr. Midkiff resigned from the Board of Directors of the Company.

4.      Defendant Thomas Ludt is an individual who resides at 101 Katelyn Lane, Nicholasville, Kentucky 40356. Defendant Ludt is Chief Executive Officer and Chairman of the Board of Directors for the Company. In December 2017, Defendant Ludt joined Phoenix Thoroughbreds as head of its U.S. operations – a position he holds concurrently with his executive and director roles at Horseco.

5.      Defendant James LaMonica is an individual who resides at 1788 Moreland Drive, Lexington, Kentucky 40502. Defendant LaMonica is a director of Horseco and serves as its President.

6.      Defendant Stuart Aikman is an individual who resides at Unit 3 32 Oatlands Esplanade, Runaway Bay, QLD 4217, Australia. Mr. Aikman is a director of Horseco.

7.      Defendant Dom Fuda is an individual who resides at Cora Drive, Cohoes, New York 12047. Defendant Fuda is a director of Horseco and serves as its Secretary.

8.      Defendant Kin Hui is an individual who resides at 72 West Norman Avenue, Arcadia, California 91007. Defendant Hui is a director of Horseco.

9.      Defendant David Keyes is an individual who resides at 1751 Reno Avenue, Suite C6, Las Vegas, Nevada 89119. Defendant Keyes is a director of Horseco.

10.     Defendant Brett Setzer is an individual who resides at 300 Delaney Woods Road, Lexington, Kentucky 40356. Defendant Setzer is a director of Horseco.

11.     Defendant Keeneland is a Kentucky corporation that has its principal place of business at Lexington, Kentucky.

12.     Defendant Dixon is an individual who resides at 998 Sugarbush Trail, Lexington, Kentucky 40509.

13.     Defendant Privato Group LLC is a Nevada limited liability company that has its principal place of business at Nicholasville, Kentucky.

14.     This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 in that it arises under the laws of the United States and 18 U.S.C. § 1964 in that it seeks to prevent and restrain violations of 18 U.S.C. § 1962 and seeks to redress injury to business or property by such violations.  This Court further has supplemental jurisdiction over all claims in this action that do not arise under the laws of the United States pursuant to 28 U.S.C. § 1367(a).

15.     This Court independently has subject-matter jurisdiction of this action pursuant to 28 U.S.C. §1332(a) in that no Plaintiff is a citizen of the same state or foreign state as any Defendant, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  The Complaint asserts claims against directors and officers of a corporation that has its principal place of business in the Southern District of Ohio and against a corporation that aided and abetted those directors and officers.  Venue further is proper in this judicial district pursuant to 18 U.S.C. § 1965(a) and (b) in that the RICO Defendants have transacted their affairs in the

Southern District of Ohio and in that the ends of justice require the parties to be brought before this Court.

## BACKGROUND FACTS

### The Genesis of Horseco

17.     Horseco provides products and services for horses and their caretakers, including but not limited to stable management services, a platform to buy and sell horses, and an online marketplace to negotiate the purchase of stallion seasons.  Horseco has several business lines including iStable, Horseco Exchange, Horseco Health, and Horseco Sales.  iStable is a software application for stable management that includes task and activity tracking, integrated multimedia, automated communication, and billing support.  Horseco Exchange is a lead management and proposal negotiation service for mare owners to connect with farms and receive stallion season offers.  Horseco Health offers a variety of equine health products, including Horseco Protect, Horseco Heal, and Horseco BreezeX.  Horseco Sales is an unlaunched online technology platform built to facilitate the online sale of horses.  Horseco was founded with an express business plan to leverage a single technology platform and operational infrastructure across various business lines to create a highly scalable, multi-faceted equine services company.

18.     Mr. Midkiff personally developed iStable and spearheaded the formation of Horseco Sales, LLC, the predecessor of Horseco.  To form Horseco, Mr. Midkiff collaborated with Defendant LaMonica, president of The Stallion Company and Starquine, an online sales platform for the thoroughbred industry.

19.     On July 7, 2016, Horseco was converted to a corporation from Horseco Sales, LLC, a Delaware limited liability company, pursuant to Del. Code Ann. tit. 8, § 265.  The July 7,

2016 Certificate of Incorporation of Horseco ("Certificate of Incorporation") was amended on September 15, 2016 by the Certificate of Amendment of the Incorporation of Horseco, Inc. ("Amended Certificate of Incorporation"). The Certificate of Incorporation and the Amended Certificate of Incorporation do not contain any provision exculpating the directors of Horseco from liability for breach of fiduciary duties as permitted by Del. Code Ann. tit. 8, § 102(b)(7).

20. On July 21, 2016, the Bylaws of Horseco, Inc. ("Bylaws") were adopted. The Bylaws authorize the creation of up to nine directors and three officers of Horseco: President, Secretary, and Treasurer.

21. On July 21, 2016, Horseco and its then-shareholders, The TLMJ Revocable Trust, Defendant LaMonica, Adrienne Hall-Midkiff, and Jean Midkiff, entered into a Stockholders' Agreement, pursuant to which (a) Mr. Midkiff and Defendant LaMonica were named directors of Horseco, and (b) Mr. Midkiff was authorized to designate one additional director. Mr. Midkiff designated William ("Russ") Russell to be a Horseco director.

22. In addition to serving as a director of Horseco, by the end of 2016, Mr. Midkiff was acting as the Company's Secretary, Chief Operating Officer, and Chief Information Officer. On or about March 1, 2018, the Defendant Directors removed Mr. Midkiff from his positions as Secretary, Chief Operating Officer, and Chief Information Officer of Horseco – absent any discussion or evaluation by the Board, written notice from the Board, or opportunity to cure, each of which is required by the express terms of the Stockholders' Agreement. On March 19, 2018, Mr. Midkiff resigned from the Board.

23. In addition to acting as a director of Horseco, by the end of 2016, Defendant LaMonica was serving as the Company's President. He remains a director and President of

Horseco despite the Bylaws providing that "the President shall be the chief executive officer." Concurrent with his Horseco positions, Defendant LaMonica continues to serve as president of The Stallion Company, an equine bloodstock agency. He often conducts Horseco business from his Stallion Company email address and uses Horseco employees for Stallion Company business, which violate his fiduciary duties to Horseco. As a director and officer of Horseco, Defendant LaMonica owes fiduciary duties to Horseco and its shareholders.

24.     In an attempt to benefit from the skills, experience, and professional network of an equine industry leader, Defendant LaMonica persuaded Mr. Midkiff that they should recruit Defendant Ludt to join Horseco. Defendant Ludt purports to be well-connected professionally, politically, and socially in the equine industry, having served as chairman of the Breeders' Cup, president of Santa Anita Park racetrack, and president of Vinery, Ltd. He also was on the management team of Pegasus World Cup, and was appointed by Ernie Fletcher, then Governor of Kentucky, to serve on the Kentucky Horse Racing Commission.

25.     In October 2016, Defendant Ludt joined Horseco as a consultant and member of the Board of Directors. By early 2017, Defendant Ludt became Chief Executive Officer and Chairman of the Board of Directors; Defendant Ludt remains in those positions as of this filing. As a director and officer of Horseco, Defendant Ludt owes fiduciary duties to Horseco and its shareholders.

26.     On October 12, 2016, Horseco entered into a Stock Option Agreement with Defendant Ludt pursuant to which Defendant Ludt agreed, among other terms: (a) not to disclose certain information, observations, and data he would obtain as a director of Horseco; (b) not to own directly or indirectly any interest in, manage, control, participate in, consult with,

or render services for competing services; and (c) not to induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of the Company to cease doing business with Horseco or interfere in any material and adverse respect with the relationship between any such customer, supplier, licensee, licensor, franchisee or business relation and Horseco. Pursuant to the express terms of the Stock Option Agreement, the Company's shareholders, including The TLMJ Revocable Trust, are third-party beneficiaries of the Stock Option Agreement.

27. Defendants Ludt and LaMonica then recruited additional directors to - not act as independent fiduciaries of the Company or a check on the other directors' decisions - but to rubberstamp their actions made for their own personal benefit. While the original terms of joining the Board of Directors required an investment in the Company of at least $150,000. Defendant Ludt waived that investment requirement threshold (over the objections of Mr. Midkiff) for Defendants Hui and Fuda. The addition of Defendants Hui and Fuda to the Board solidified Defendant Ludt's ability to control the affairs of Horseco without any legitimate checks or balances. Put differently, Defendant Ludt, aided by Defendant LaMonica, stacked the Board in their favor. Indeed, Defendant LaMonica has repeatedly warned that if a director disagrees with Defendant Ludt, then he will be removed from the Board. The effect of adding these additional directors has been to ensure that Defendant Ludt's negative actions and failures to act on behalf of the Company remain unchecked.

28. The Board of Directors came to consist of Messrs. Midkiff and Russell, and Defendants Ludt, LaMonica, Aikman, Fuda, Hui, Keyes, and Setzer. Each of these individuals continues to serve as directors of Horseco. As directors of Horseco, Defendants Aikman, Fuda, Hui, Keyes, and Setzer individually owe fiduciary duties to Horseco and its shareholders.

## **The Director Defendants' Dereliction of Duties**

29.     In early 2017, shortly after the Board of Directors was formed and Defendant

Ludt became Chief Executive Officer, it became apparent that the Director Defendants were not

interested in leading Horseco in good faith or operating the Company consistent with its Bylaws

and in accordance with their business plan.  Until recently, however, it was not apparent the

lengths at which the Director Defendants would so heedlessly defer to Defendants Ludt and

LaMonica for all decisions (or lack thereof) relating to the Company.  Put differently, as alleged

in detail throughout this Complaint, the Director Defendants sat idle while Defendants Ludt and

LaMonica ran the Company into the ground, ignored Mr. Midkiff's pleas to change course, and

transferred strategy and management of the Company to Privato Group - an unknown,

inexperienced company led by individuals with links to a criminal felon and no experience in

this industry.

30.     Since he joined Horseco, Defendant Ludt has been geographically distant and

failed to manage Horseco's offices in Springboro, Ohio and Lexington, Kentucky.  He has spent

the vast majority of his time either in California, Florida, the United Kingdom, and Australia on

behalf of a competing company, Phoenix Thoroughbreds, for which he concurrently serves as

head of U.S. operations, as well as travelling personally on various vacations.  As of the date of

this filing, Defendant Ludt has spent approximately 5-6 hours at Horseco's Ohio office and

principal place of business since joining the Company in October 2016; and less than a month at

the Horseco offices in Lexington, Kentucky.  His lack of focus and attention to Horseco, coupled

with the failure of the Director Defendants to question or attempt to rectify his managerial

delinquency, is a fundamental cause of the Company's decline.

31.     In addition to Defendant Ludt's physical absenteeism, as documented in numerous email communications, Defendant Ludt fails to understand the basic operations of Horseco, including but not limited to its information technology, sales, and finances, as well as daily work items and ongoing corporate initiatives.  For example, in September 2017, Defendant Ludt lamented, "we have invested a lot of money into technology and as stated before I hope that reward is in the future . . . we need to reorganize and downsize where their [sic] isn't revenue right now. . . ."  The Company's investment in technology is in part a reference to Horseco Exchange and Horseco Sales, the two highest priority technical projects for the Company; the technical work was meeting their budget when he made that comment.  Ironically, when Defendant Ludt first brought up a potential deal with Keeneland in early 2017, Defendant Ludt put the Horseco Sales project on hold over Mr. Midkiff's objections.  At that time the project was approximately 85% complete and required only another 4-6 weeks' worth of work to complete and begin the generation of income.  Ongoing discussions with Keeneland ultimately stalled the Horseco Sales project indefinitely, delaying the Company's ability to profit from the budgeted investment in the project.  Rather than reveal his ignorance, Defendant Ludt attempted to deflect blame for a lack of revenue on the budgeted expenses associated with building the online platform *he* shut down until *he* finalized a purported deal with Keeneland – a deal that he refused to provide details on to the Board of Directors or allow anyone else from Horseco be involved.  Notably, the very online platform that Defendant Ludt stalled and blamed for not generating revenue is the same platform he is still trying to sell to Keeneland.

32.     Defendant Ludt's failure to understand the fundamental operations and priorities of Horseco results from his inattention to the Company, including day-to-day operations and communications with Mr. Midkiff and key employees.  For example, in November 2017, Vice

President for Product Development Todd Plunkett, implored Defendants Ludt and LaMonica to improve communication: **"Communication** – we MUST do a better job at this. It is at the top of the list of reasons why organizations underperform and/or fail." Mr. Plunkett further implored management to respond to emails "for the good of the business and out of respect for one another." Put differently, Mr. Plunkett reasonably sought not to be ignored. Notwithstanding that specific plea, neither Defendant Ludt nor Defendant LaMonica responded to Mr. Plunkett's email.

33.     Similarly, Defendant Ludt has an established track record of either ignoring altogether, or offering a non-substantive response after weeks have passed, to Mr. Midkiff's communications regarding plans, processes, and projections used to demonstrate how to improve the Company's performance. Again, those communications were ignored. Defendant's Ludt's malingering, coupled with his inattention to corporate communications, demonstrates that he has failed to monitor or otherwise oversee Horseco's operations and apprise himself of adequate and necessary information to make informed business decisions.

34.     Likewise, despite serving as a director and President of Horseco, Defendant LaMonica's inattention to the Company and blind deference to Defendant Ludt has led to the Company's rapidly deteriorating financial condition. Like Defendant Ludt, Defendant LaMonica concurrently leads a competitor, The Stallion Company. The Stallion Company touts itself as "specializ[ing] in all aspects of the Thoroughbred stallion business[,]" including the purchase and sale of stallions. The Stallion Company's website also identifies Starquine.com, another company Defendant LaMonica founded and runs, as "currently [] the industry's leading online Thoroughbred listing service." Defendant LaMonica continues to operate The Stallion Company, conduct Horseco business from Stallion Company's office in Lexington, Kentucky (as

opposed to an independent Horseco office), use his email address "jLaMonica@stallioncompany.com," and use Horseco employee Holly France for administration and bookkeeping functions of The Stallion Company. Defendant LaMonica, like Defendant Ludt, has a duty of loyalty to the Company that he has violated in favor of his own interests.

35.     The remaining Director Defendants have been even less engaged than Defendants Ludt and LaMonica. Indeed, they have ceded any and all responsibility for the Company to Defendants Ludt and LaMonica, and they have failed to question or even inquire about the business. Defendant Hui has never attended a meeting of the Board of Directors. While Directors Aikman, Fuda, Keyes, and Setzer have attended Board meetings, none of them have ever questioned the decisions, comments, or representations of Defendants Ludt or LaMonica. The only Board members to seek discussion, attempt to inform their decisions, or engage in some deliberation are Messrs. Midkiff and Russell.

36.     Tellingly, Defendant LaMonica has repeatedly informed Mr. Midkiff that the Director Defendants would rather lose their investments in Horseco than disagree with Defendant Ludt, who the remaining Director Defendants misperceive as an influential figure in the equine industry globally, as well as in Lexington society. Rather than risk the financial, professional, and social equity that they perceive to enjoy in being complicit in Defendant Ludt's decisions, the Director Defendants choose to ignore their fiduciary duties. For example, Defendant Aikman is the chief financial officer for Magic Millions, a Thoroughbred auction house based in Australia. Defendant Ludt, as head of U.S. operations for Phoenix Thoroughbreds, is a member of a team that in January alone spent $1.6 million AUD at a Magic Millions auction.

37.     In 2017, as a result of the Director Defendants' abdication of their fiduciary duties to Horseco and its shareholders, the Company's sales began to deteriorate across all business lines. Two months after Horseco Protect was released in July 2017 to initial success, its sales had already dropped roughly 25% due to the failure of Defendants Ludt and LaMonica to support the product and their diversion of resources to other projects. By November 2017, total top-line sales had decreased from $77,768 per month in November 2016 to $45,853. By February 2018, monthly sales had decreased to $25,034; a decrease of 67% from the launch of Company operations in November 2016. Not once did Defendants Aikman, Fuda, Hui, Keyes, or Setzer call for a meeting, seek to develop a recovery plan, or question what was happening within the Company to cause the financial decline.

38.     Mr. Midkiff, as Chief Operating Officer, repeatedly urged Defendants Ludt and Defendant LaMonica to address various issues facing the Company regarding sales, costs, marketing, and cash flow. Mr. Midkiff further pleaded with Defendants Ludt and LaMonica to implement plans to increase revenue, establish processes to manage inventory acquisition and to hold employees accountable, develop strategies for product releases, and even employ basic financial tools, like budgets. Mr. Midkiff repeated these pleas during various management meetings – which fell on the deaf ears of Defendants Ludt and LaMonica. Indeed, Defendants Ludt and LaMonica either ignored Mr. Midkiff altogether, replied to his communications days (sometimes weeks) later (often without any substantive response), or merely paid lip service to potential solutions with little to no follow-up and execution.

39.     On September 13, 2017, Mr. Midkiff sent an email to Defendants Ludt and LaMonica with draft financial projections showing that with a conservative forecast, Horseco's cash would soon drop to $350,000. Mr. Midkiff stated in the email that as he had "argued deeply

about for months and even more so lately, trackable processes, routine and accountability within a sales framework that benchmarks results while providing a consistent client sales and customer service experience," were needed. Indeed, Mr. Midkiff offered "to do the work to not only lay this out and create the framework but support it as it matures." He expressed concern, however, that his "efforts [would be] mitigated given the resistance that they face." Defendant Ludt failed to respond to this email for 10 days. An accurate copy of this email is attached as Exhibit 1.

40. On November 10, 2017, Mr. Midkiff sent an email to Defendants Ludt and LaMonica stating, "I have been harping on the lack of a sales plan, structure and accountability management for months and candidly have been silenced and pushed aside for doing so. Despite trying to float ideas and plans they have fallen on deaf ears and we find ourselves in a spot that honestly could have been predicted. This business needs an overhaul that involves laying out clear and concise objectives, day in and day out follow-up, accountability for sales people with an all hands on deck mindset from every member of this team." He added, "I know everyone pushes back on my 'plans' and 'too much tracking and oversight', however, the current fluidity of what this business is doing is simply not working and management needs to acknowledge that, contribute to an overhaul, and get this business at least attempting to run out a playbook." An accurate copy of this email is attached as Exhibit 2. Defendants Ludt and LaMonica failed to respond to Mr. Midkiff's concerns.

41. On November 21, 2017, Mr. Midkiff sent an email to Defendants Ludt and LaMonica, among other key employees, stating, "Every month or two there is a 'we need to get together and put a plan in place' meeting that results in some tangible ideas that then drift and go unfulfilled because of the silence that comes afterwards. Something as basic as a weekly meeting I was told would come out of the meeting a few weeks back still hasn't taken place." He

continued, "Time is not something we have a lot of. Every business day that goes without response, implementation and execution, **costs this business $3,050 in cash**. That in itself should be enough to understand what is being done can't continue and this business doesn't have time for people to either a) never hear anything or be presented with a differing opinion – one with facts or b) hear back weeks later." (Emphasis in original.) An accurate copy of this email is attached as Exhibit 3. Defendants Ludt and LaMonica failed to respond.

42.     The Company's situation became increasingly dire. On November 28, 2017, Mr. Midkiff sent an email to Defendants Ludt and LaMonica providing a cash flow analysis showing that, "[b]ased on current trends this business is out of cash in April with March being the true point requiring a wind-down." Mr. Midkiff further stated, "This business needs a complete org chart re-set immediately as well as staff and process changes that should have taken place yesterday. I continue to scratch my head why none of this resonates?" An accurate copy of this email is attached as Exhibit 4. Defendants Ludt and LaMonica failed to respond.

43.     As the financial condition of Horseco continued to deteriorate, the Director Defendants remained focused on extraneous personal and professional pursuits all to the detriment of the Company and in violation of their fiduciary duties. As Horseco continued to sink financially, Defendant Ludt entered into secret talks with Phoenix Thoroughbreds. Upon information and belief, those talks began as early as August 2017. In December 2017, it was announced that Defendant Ludt had been named head of U.S. operations for Phoenix Thoroughbreds, a British company that requires Defendant Ludt to travel regularly to Florida, California, Australia, and the United Kingdom. Defendant Ludt failed to apprise the Board of Directors of his communications, and ultimate employment, with Phoenix Thoroughbreds until less than an hour and a half before Phoenix Thoroughbreds released a worldwide press release

touting the addition of Defendant Ludt as its new head of U.S. operations. None of the Director

Defendants questioned this move by Defendant Ludt that creates a conflict of interest and

undermines his loyalty to the Company.

### The Vague Promise of Keeneland

44.     Despite their lack of concern with Horseco's internal and ongoing corporate

affairs, the Defendant Directors were enamored with one potential corporate opportunity:

entering into a software licensing agreement with Defendant Keeneland, which describes itself as

"the world's largest and most prominent Thoroughbred auction house."

45.     Defendant Ludt has been pursuing a purported potential deal with Keeneland for

nearly a year. Defendant Ludt's primary point of contact at Keeneland was and is Robert (Bob)

N. Elliston, Vice President of Racing and Sales for Keeneland. Mr. Elliston is a longtime friend

and colleague of Defendant Ludt. Mr. Elliston joined Keeneland in July 2016 after serving as

executive vice president and Chief Operating Officer of the Breeders' Cup while Defendant Ludt

was the chairman of that organization. Mr. Elliston previously served as president and Chief

Executive Officer of Turfway Park in Northern Kentucky. While Mr. Elliston was in that role,

Defendant Ludt's Vinery, Ltd. became the title sponsor for Turfway Park's premier race.

Defendant Ludt is protective of his relationship Mr. Elliston and has refused to allow anyone at

Horseco to meet with him without Defendant Ludt in attendance.

46.     Despite repeated requests from Mr. Midkiff and Mr. Russell, respectively, for any

information relating to the potential deal with Keeneland, Defendant Ludt refused to provide any

financial details, the status of any negotiations, or any other information that would be material

to any deal with Keeneland, even refusing requests by Mr. Midkiff to see draft contracts and

letters of intent. Defendant Ludt precluded anyone else from communicating with Keeneland about the potential deal, and refused to allow anyone from the Company to join him in meetings with Keeneland regarding the potential deal unless Defendant Ludt or Defendant LaMonica was also present. Director Defendants never questioned the secretive behavior. Defendant Ludt's clandestine efforts to negotiate with Keeneland hurt the Company financially because of the costs incurred and the distractions of management's time and efforts.

47. In addition, the mythological deal with Keeneland caused Horseco to forgo other significant, imminent business opportunities that would have made use of its $150,000 software platform. For example, the Director Defendants effectively blocked Horseco from taking on consulting projects with outside clients such as Taylor Made Sales and Pfizer's Animal Health Division ("Pfizer"). The scuttled opportunities with Taylor Made Sales and Pfizer would have generated hundreds of thousands of dollars in short-term revenue for Horseco, while also helping build long-term recurring revenue streams from those clients.

48. Notwithstanding Defendant Ludt's refusals to respond to Mr. Midkiff's requests for information relating to the purported Keeneland deal, Defendant Ludt proactively informed Horseco Vice Presidents Blankenship and Plunkett and Mr. Russell that, among the key terms of any agreement to be struck between Horseco and Keeneland are:

(a) Defendant Ludt must remain as a corporate director and/or officer of Horseco at all times Horseco is doing business with Keeneland;

(b) Mr. Midkiff could not be involved with Horseco; and

(c) Horseco must discontinue all business with The Fasig-Tipton Company, Inc. ("Fasig-Tipton"), an auction house for Thoroughbred horses that competes with

Keeneland, and which has an ongoing service contract with Horseco worth at least a minimum of $60,000 annually and has spent hundreds of thousands of dollars with Horseco in additional software development fees.

49.     While Defendant LaMonica told Mr. Midkiff that Horseco should just find someone else to do the work, Mr. Midkiff was concerned about honoring Horseco's contractual relationship with and commitment to Fasig-Tipton.

50.     Despite a lack of concrete financial information, Mr. Midkiff attempted to evaluate and project the value of various hypothetical Keeneland deals, and asked Defendant Ludt to provide missing details and feedback.  Defendant Ludt never responded

51.     The repeated attempts of Messrs. Midkiff and Russel to obtain material information relating to the purported on-going negotiations with Keeneland were also rebuffed by the remaining Director Defendants.  The Director Defendants are not interested in whether or how the purported Keeneland deal will benefit the Company; instead, they are captivated with what a relationship with Keeneland will do for their personal financial and social interests. Indeed, Defendant LaMonica confessed to Mr. Midkiff that he did not care what impact a deal with Keeneland would have on Horseco, stating: "Don't ruin this for me.  I've been waiting for this my entire life.  Do you realize in this town when you work with Keeneland you can walk around like you have a 12 inch c**k." Defendant LaMonica further indicated that he refused to question Defendant Ludt about general business performance issues because 'without Tom we lose Bob [Elliston]" of Keeneland.

**Indian Charlie:  The Director Defendants Ignore Threats of Legal Liability to Horseco**

52.    Defendant Ludt also created intentional risks for the Company by advertising Horseco Protect in *Indian Charlie*, a gossip and satire newsletter for the equine industry.  Its tag line is:  "We never let the truth get in the way of a good story."  On information and belief, Defendant Ludt sought to publish an advertisement for Horseco Protect in *Indian Charlie* to garner personal favor with the newsletter's editor.

53.    As Chief Operating Officer, Mr. Midkiff was directly responsible for Horseco's marketing or advertising efforts.  Throughout 2017, Mr. Midkiff recommended that Horseco should focus less on trade publications and more on internet banner advertisements, and kept Defendants Ludt and LaMonica apprised of his efforts and results.  As Chief Executive Officer, Defendant Ludt was never directly responsible for the Company's marketing efforts and did not personally implement any marketing strategies for Horseco, until the *Indian Charlie* advertisement.

54.    In July 2017, Defendant Ludt decided unilaterally to advertise Horseco Protect in *Indian Charlie* – absent any discussion among the Board of Directors or decision about the content of that advertising.

55.    On September 25, 2017, Horseco received a demand letter from an attorney for a competitor stating that the advertisement in *Indian Charlie* violated the Lanham Act, 15 U.S.C. § 1501, et seq. for false advertising, and that the content of the advertisement suggested that Horseco Protect was subject to Food and Drug Administration ("FDA") regulations, of which it was also in violation.  Without sharing the demand letter from Horseco's competitor with the Board of Directors, or calling a special meeting of the Board to discuss and evaluate, Defendant

Ludt and LaMonica retained outside counsel on behalf of Horseco, which sent a response letter. Specifically, counsel for Horseco stated in October 2017 that the Company had requested of *Indian Charlie* that "Horseco Protect not be used in any further advertisements for the newsletter going forward."

56.     Nevertheless, on January 8, 2018, Mr. Midkiff learned that a Horseco Protect advertisement similar to the one that was subject to the complaints of Horseco's competitor was again running in *Indian Charlie*. The Board of Directors never discussed or approved the January 2018 advertisement, which is contrary to what the competitor was told in October 2017 by counsel retained by Defendants Ludt and LaMonica. Mr. Midkiff sent an email to Defendants Ludt and LaMonica, among others, warning about the potential legal risk, including potential violations of the Lanham Act and FDA regulations, as described in the cease and desist letter sent a few months prior. Mr. Midkiff received no response. Mr. Midkiff followed-up with the same concerns and pleas to reconsider running these ads with emails on January 27, 2018 and February 10, 2018, both of which received no response. Indeed, as of March 13, 2018, the advertisement continues to run in *Indian Charlie*. As of the date of this filing, Messrs. Midkiff and Russell are the only Board members ever to have questioned the propriety of that advertisement, or the allegations by Horseco's competitor. Once again, the Director Defendants blindly defer to Defendant Ludt.

**Defendant Ludt Removes Mr. Midkiff Absent Appropriate Process or Communication**

57.     In January 2018, Horseco's earnings before interest, taxes and amortization ("EBITA") was negative $43,000. As of January 31, 2018, Horseco had $293,000 of cash on hand, which was expected to dwindle to $223,000 by the end of February. Despite the prospect

of insolvency, the Director Defendants failed to act or question management. Further, the inability of the Board of Directors to articulate a corporate strategy prevented directors from attracting capital from investors for fear of looking ill-prepared and instilling a "fire-sale" mentality.

58.     Given these financial concerns, Mr. Midkiff, as a significant creditor of Horseco, called a cognovit note requiring Horseco to pay to him in excess of $200,000. Mr. Midkiff is presently seeking a judgment for default on that note in Ohio state court.

59.     In addition, on February 22, 2018, per the terms of the Bylaws, Mr. Midkiff, in conjunction with Mr. Russell, called a special meeting of the Board of Directors for February 27, 2018 to call for the removal of Defendant Ludt as Chief Executive Officer and a restructure of executive leadership. He also distributed to the directors a 26-page slide deck detailing the grave issues facing Horseco and the need for new leadership. An accurate copy of the slide deck is attached as Exhibit 5. However, only Messrs. Midkiff and Russell, and Defendant Keyes, attended the special meeting of the Board of Directors, which was dismissed for lack of quorum. No other director attended the meeting, nor did any director other than Defendant Aikman apprise Mr. Midkiff or Mr. Russell of his inability to attend the meeting, or otherwise acknowledge the meeting.

60.     On March 8, 2018, Defendant Ludt sent an email to Mr. Russell, falsely accusing Mr. Midkiff of not providing notice of the February 27, 2018 special meeting. Yet, on February 20, 2018, Mr. Midkiff had a telephone conversation with Defendant Ludt informing him of his plans to call the special meeting, and Mr. Midkiff sent an email on February 23, 2018

to every director, including Defendant Ludt, that included a Notice of Special Meeting of Board of Directors.  An accurate copy of that email is attached as Exhibit 6.

61.     In retaliation for calling the special board meeting on February 27, 2018, at the next regularly-scheduled board meeting on March 1, 2018, the Board of Directors removed Mr. Midkiff from his positions as Secretary, Chief Operating Officer, and Chief Information Officer.  The 1Q2018 Board Meeting was scheduled for March 1, 2018, at 5:00 p.m. EST.  At 4:02 p.m. EST, an agenda was emailed to the Board, a copy of which is shown below:



62.     The March 1, 2018 Board meeting lasted approximately ten to fifteen minutes. Each of the Board members, save for Defendant Hui, attended the meeting, as well as outside counsel for Horseco, John C. Roach, Esq., a personal friend of Defendant Ludt.  Defendant Ludt led the meeting and addressed only two issues – removal of Mr. Midkiff as Secretary and a vote to approve the minutes of the Board's January 10, 2018 meeting.  On a motion by Defendant Ludt that was seconded by Defendant Aikman, the Board voted to replace Mr. Midkiff as Secretary with Defendant Fuda.  As the meeting was held via teleconference, it is unclear who voted to remove Mr. Midkiff; Defendants Ludt, LaMonica, and Fuda have refused details of the vote tally – despite repeated requests from Messrs. Midkiff and Russell.

63.     During the March 1, 2018 board meeting, Defendant Ludt also solicited a vote to approve the minutes from the January 10, 2018 Board meeting.  However, no minutes for the January 10, 2018 Board Meeting were circulated.  Indeed, as Mr. Midkiff was Secretary during the January 10, 2018 meeting, he would have been responsible for preparing and circulating such minutes; no such minutes have been prepared or circulated as of the filing of this Complaint. Further, like *Indian Charlie*, not one to be deterred by facts or lack of written minutes, Defendant Ludt falsely informed the Board that, at the January 10, 2018 meeting, the Board had voted to move the Company's finance and accounting functions from Dayton, Ohio to Lexington, Kentucky – absent any specifics as to which bank or accounting firm in Lexington would be responsible, or any operational plan associated with such a transfer.  Notwithstanding the lack of any minutes to review or comment on, those Director Defendants in attendance voted to approve the non-existent minutes – never questioning what the minutes provided for, when a copy would be circulated, or why a copy had not yet been prepared.  Mr. Midkiff dissented from the approval of the non-existent minutes, and Mr. Russell did not vote on the motion.  Coincidently, despite

having taken a vote to approve minutes from the January 10, 2018 meeting during the Board's March 1, 2018 meeting, that vote was not reflected in the minutes of the March 1, 2018 meeting eventually provided to Mr. Midkiff.

64.     Several times during the March 1, 2018 Board meeting, Mr. Midkiff attempted to ask questions; however, Defendant Ludt refused to allow Mr. Midkiff to speak, or engage in any dialogue or debate with the Board.  The Director Defendants in attendance failed to speak up, question any of the decisions, or hold any discussion on the matters relating to Mr. Midkiff's removal and the transfer of Horseco's finances to Kentucky, including whether there was any plan in place as to how the Company's online business would function, upcoming payroll would be processed, or checks would be deposited, among other basic, day-to-day operations of the Company.  As Mr. Midkiff soon learned, no such transition plan was in place.

65.     On March 11, 2018, Mr. Midkiff requested that the new corporate Secretary, Defendant Fuda, provide a copy of the minutes from the March 1, 2018 meeting.  Defendant Fuda stated that Defendant Ludt would provide those minutes to Mr. Midkiff; no minutes were provided to Mr. Midkiff until March 15, 2018 – despite his still being a member of the Board of Directors, as the Bylaws provide that only a shareholder vote may remove a member of the Board.  No such shareholder vote has taken place.  Indeed, no shareholder meeting has ever been convened in the history of the Company.  An accurate copy of the minutes of the March 1, 2018 meeting of the Board of Directors (which inaccurately state that the meeting occurred on March 2, 2018) is attached as Exhibit 7.

66.     On March 2, 2018, Defendant LaMonica phoned Scott Blankenship, Vice President Software Development for Horseco to provide an update on where the Company was

following the March 1 Board Meeting. During the call Defendant LaMonica informed

Mr. Blankenship that the Board voted on March 1 to remove Mr. Midkiff from day-to-day

management of the Company because Mr. Midkiff was disruptive and created a bad working

environment. Defendant LaMonica explained to Mr. Blankenship that he disliked the "cloak and

dagger" approach of the Board, insinuating that some members of the Board, including the

Director Defendants, communicated prior to the March 1 meeting to discuss Mr. Midkiff's ouster

and the transition of operations from Ohio to Kentucky. Mr. Blankenship asked Defendant

LaMonica what the Board's plan is for the Company; Defendant LaMonica responded that they

were working on a plan. When Mr. Blankenship told Defendant LaMonica that Defendant Ludt

has failed to create and/or communicate a strategy for the Company since taking over as Chief

Executive Officer, Defendant LaMonica blamed Mr. Midkiff and warned Mr. Blankenship,

repeatedly, to "be careful" about putting any of the blame on Defendant Ludt.

67.     On March 2, 2018, Defendant Ludt informed Defendant LaMonica and Scott

Blankenship that, after months of vague and stalled negotiations with Keeneland, the day

following Mr. Midkiff's ouster, Defendant Ludt had reached a verbal agreement with Keeneland

and that a deal was moving forward. To date, however, no further details about the deal have

been provided to the Board or Horseco staff. An accurate copy of that email is shown below:



**Tom Ludt**
to me, Lamonica
1:49 PM View details

I met with Bob Elliston today and we are verbally ok with moving forward with website (technology) as we finalize the contract.
Bob asked if you would reach out to him and/or Brad Lovell?? to set a meeting next week to start the process of having our auction site.

Please understand their is alot of work ahead but this is in the best interest of Horseco. We wont go live until we are all ready which will probably be September.
Please let me know if this ok and when you reach out to Bob and Brad.

Thanks

**Absent Any Due Diligence or Board Vote,**
**<u>Director Defendants Engage Privato Group to Manage the Company</u>**

68.     Upon information and belief, following Mr. Midkiff's removal, absent any due diligence, Board communication, discussion or vetting, or any forewarning or planning of any kind, Defendants Ludt and LaMonica moved Mr. Midkiff's responsibilities for financial and technical oversight, as well as strategy development to Privato Group, led by Defendant Dixon. A Board meeting scheduled for March 8 where these developments could have been (and should have been) addressed was delayed until the end of the month.

69.     On March 8, 2017, after Mr. Russell questioned the engagement of Privato Group and Defendant Dixon, Defendant Ludt sent an email to Mr. Russell stating: "We have in place a

27

new management group that is <u>tech savvy, accounting driven</u> and has a animal health advisor

with <u>incredible experience</u> joining Horseco at a fraction of our current burn." (Emphasis added.)

He added in the email that he was restructuring the company – notwithstanding a lack of board

approval – and warned Mr. Russell, "You can make the decision on what activity you want to be

part of as a board member or you can choose to step down from the board if you aren't happy

with the future."

70.     Defendant Ludt's representations to Mr. Russell that Privato group is "tech savvy,

accounting driven" and has "incredible experience" are false and this falsity is revealed with

modest due diligence.  Privato Group LLC was formed less than two months ago, on January 25,

2018.  The company has no website or online presence.  If Defendant Dixon has any relevant

experience, it has not been communicated to the board.  He has, however, falsely implied that he

is a certified public accountant to Horseco staff before finally admitting on March 15, 2018 that

he was not.  Further, Defendant Dixon has held out Valerio DellaPorta as Privato Company's

Chief Technology Officer; yet, Mr. Dellaporta is listed online as Chief Technology Officer for

Curare Telehealth, an affiliate of Curare Laboratories, LLC.

71.     Had the Director Defendants conducted any due diligence whatsoever on

Defendant Dixon prior to retaining him to take over finances, strategy, and other operational

services for the Company, they would have found that Defendant Dixon is currently embroiled in

litigation in state court in Lexington, Kentucky.  In December 2017, Curare Laboratories, LLC,

Defendant Dixon, and several others, including Charles E. "Junior" Johnson (convicted in federal

court in 2008 of securities fraud, conspiracy to commit securities fraud, witness tampering, and

obstruction of a court proceeding and sentenced to nine years in prison), were named as

defendants in the following case:  <u>Solar Holdings Group, LLC, et al. v. Curare Laboratory, LLC,</u>

et al., Fayette Cir. Ct. No. 17-CI-4443 (filed Dec. 15, 2017). The verified complaint in that case alleges breaches of fiduciary duties and aiding and abetting of breach of fiduciary duties, among other claims, based on Defendant Dixon and others' alleged improper syphoning of funds from a company that was owed under a promissory note to evade creditors.

72. The verified complaint in Solar Holdings alleges that Bluewater Toxicology, LLC ("Bluewater") was owned by Solar Holdings Group, LLC ("Solar"), with Jennifer Bolus owning the majority stake in Solar. According to the verified complaint, Defendant Dixon and others, acting through convicted felon Junior Johnson as their agent, purchased Bluewater and began to siphon its assets. The verified complaint alleges that Dixon and Johnson began transferring Bluewater's funds to a new bank account that they set up, and that they restricted Bolus's access to those funds by transferring signatory authority. An accurate copy of the verified complaint in that case is attached as Exhibit 8.

73. As part of the transfer of operations to Privato Group and Defendant Dixon, Defendants Ludt and LaMonica have caused funds in the Company's bank accounts to be transferred to a Kentucky bank without any apparent planning to change payroll processing information, or ensure accurate and timely payment of health insurance, taxes, rent, utilities, or processing of purchase payments and the deposit of payments. In fact, as of the date of this filing and approximately three weeks after the movement of accounting functions, very few general ledger transactions have been logged within the Company's accounting system and no February 2018 financials have been completed. Moreover, Privato Group and Defendant Dixon have recklessly failed to accrue expenses for Privato Group's work on behalf of Horseco on grounds that something would eventually be worked out, opening up Horseco to potential accounting and tax consequences.

74.     Also as part of the transfer of operations to Privato Group and Defendant Dixon, Defendants Ludt and LaMonica have started the transfer of Horseco's valuable intellectual property, i.e. the Horseco Sales software, client lists, technical planning documentation, and financial information to Privato Group and Defendant Dixon.

75.     None of the Director Defendants has questioned any of this activity whatsoever.

76.     These efforts to siphon cash and intellectual property from Horseco represent a scheme to defraud and to obtain money or property by false and fraudulent pretenses and representations transmitted by wire and through the mail, in violation of 18 U.S.C. §§ 1341 and 1343.

77.     At the March 1, 2018 Board meeting, which was held telephonically, Defendants Ludt and LaMonica falsely stated to the Board of Directors that they were "developing a strategy" for the Company's to present to board members at its next meeting.  In reality, Defendants Ludt and LaMonica had already set in motion a scheme to transfer operations to Privato Group and Defendant Dixon without any intention of waiting on a presentation to, or vote from, the Board.

78.     In a telephone conversation on March 7, 2018, Defendant Dixon falsely told Mr. Plunkett, Horseco's Vice President for Product Strategy about his credentials, including the false implication that he is a certified public accountant.

79.     In an email to Mr. Russell on March 8, 2017, Mr. Ludt falsely expressed his intent to "get this company healthy" with the "tech savvy, accounting driven" Privato Group, when in reality, Defendant Ludt has no intention of reviving Horseco's financial situation.  He was,

instead, transferring assets to a company that was neither "tech savvy" nor "accounting driven," but rather a company recently sued for allegedly looting another business.

80.    In a telephone conversation on March 12, 2017, Defendant Dixon falsely told Mr. Blankenship, Horseco's Vice President of Software Development, about Privato Group's experience in operating companies. This expertise was belied by his lack of plan to change payroll processing information, or ensure accurate and timely payment of health insurance, taxes, or utilities, or processing of purchase payments, as well as keeping the Company's General ledger up to date.

81.    Mr. Russell resigned as a director of Horseco on March 16, 2018, and Mr. Midkiff resigned as a director of Horseco on March 19, 2018.

## SATISFACTION OF FED. R. CIV. P. 23.1

82.    The TLMJ Revocable Trust has been a shareholder of Horseco since its incorporation on July 7, 2016. The TLMJ Revocable Trust currently holds 36.5% of the outstanding shares of Horseco.

83.    Demanding that the Board of Directors bring the claims in this Complaint would be futile, as the Board of Directors is dominated by the Defendant Directors. The Director Defendants respectively hold each of the seven occupied seats on the Board of Directors and control a majority of the shares of Horseco, and the claims in this Complaint are against the Director Defendants; Keeneland, which has aided and abetted their breach of fiduciary duties; and Defendants Dixon and Privato Group, which have acted in concert with Defendants Ludt and

LaMonica.  Indeed, when Plaintiff attempted to call a special meeting of the Board of Directors to discuss the issues alleged in this Complaint, Plaintiff was ignored.

84.     This action is not a collusive one to confer jurisdiction that this Court would otherwise lack.

### FIRST CLAIM FOR RELIEF
### (BREACH OF FIDUCIARY DUTIES AGAINST DIRECTOR DEFENDANTS)

85.     Plaintiff repeats the allegations contained in Paragraphs 1 to 84 of this Complaint as if fully set forth here.

86.      As directors and/or officers of Horseco, the Director Defendants owe fiduciary duties to Horseco, including duties of care and loyalty.

87.     As part of their duty of care, the Director Defendants have a duty to inform themselves, before making any business decision, of all material information reasonably available to them.  The Director Defendants also must reasonably inform themselves of alternative business decisions and not act grossly negligent in the processes that they employ. The Director Defendants must not act with reckless indifference or deliberate disregard to the whole body of stockholders or otherwise act irrationally.

88.     The Director Defendants breached their respective duties of care in several respects.  Each Director Defendant was grossly negligent in failing to inform himself of all material information reasonably available before pursuing a deal with Keeneland at the expense of other business, which Defendant Ludt failed to obtain from Keeneland or provide to the Board, and which the remaining Director Defendants did not question or demand.  Each Director Defendant was grossly negligent in failing to demand the establishment and reliance upon

32

processes to increase revenue, manage inventory acquisition, hold employees accountable, develop strategies for product releases, and employ basic financial tools, like budgets, marketing protocols/policies, etc., and did not question Defendant Ludt or Defendant LaMonica when they failed to implement such processes. Defendant Ludt was grossly negligent in running and re-running advertisements *Indian Charlie* that posed legal risk to Horseco without informing the Board of Directors, and the remaining Director Defendants were each grossly negligent in not questioning that decision when it came to light to them. Defendants Ludt and LaMonica were grossly negligent in outsourcing financial oversight, day-to-day management, and strategy development for Horseco to Dustin Dixon and Privato Group, LLC, absent any due diligence, or prior Board discussion or vote. Finally, each Director Defendant was grossly negligent in consciously disregarding their respective fiduciary duties by delegating those duties to other Director Defendants, including but not limited to Defendants Ludt and LaMonica, among other acts and omissions.

89.     In addition, as part of the Director Defendants' duty of loyalty, the best interest of Horseco and its shareholders must take precedence over any interest possessed by a director or officer that is not shared by stockholders as a whole. Moreover, the Director Defendants must act in the good faith belief that their actions are in Horseco's best interest.

90.     The Director Defendants breached their duties of loyalty and care by consciously failing to monitor or oversee the operations of Horseco and otherwise failing to act in good faith. Each Director Defendant used a potential, undefined deal with Keeneland at the expense of other imminent, lucrative business opportunities to advance interests extraneous to and inconsistent with the best interests of Horseco, including but not limited to social interests and the entrenchment of Defendant Ludt as a director and/or officer of Horseco. Each Director

Defendant consciously failed to monitor corporate affairs by delegating those obligations to other Director Defendants, including but not limited to Defendants Ludt and LaMonica. Defendant Hui has never attended a meeting of the Board of Directors. Each Defendant Director except Defendant Keyes ignored altogether a special meeting of the Board of Directors to discuss executive leadership of the Company and a necessary path forward. Defendants Ludt and LaMonica violated their fiduciary duties by concurrently working for Horseco competitors, Phoenix Thoroughbreds and The Stallion Company, respectively. Defendant Ludt violated his fiduciary duties by running an advertisement in *Indian Charlie* with legal risk to advance interests extraneous to and inconsistent with the best interests of Horseco, among other acts and omissions.

91.　　These breaches of fiduciary duty were in bad faith, lacked independence, and cannot be attributed to any rational business purpose.

92.　　As a direct and proximate result of the Director Defendants' respective breaches of their fiduciary duty of loyalty, Horseco has been damaged in an amount exceeding $75,000.

### SECOND CLAIM FOR RELIEF
### (AIDING AND ABETTING BREACH OF
### FIDUCIARY DUTIES AGAINST KEENELAND)

93.　　Plaintiff repeats the allegations contained in Paragraphs 1 to 92 of this Complaint as if fully set forth here.

94.　　Keeneland knew that the Director Defendants owed fiduciary duties to Horseco and its shareholders. Nevertheless, acting through Robert Elliston, Defendant Ludt's longtime friend and business partner, Keeneland demanded that Defendant Ludt remain as a corporate

director and/or officer of Horseco, that Mr. Midkiff be removed from the Company, and that the Company breach its existing contract with Fasig-Tipton to have any dealings with Keeneland.

95.     In making these demands, Keeneland knowingly participated in the Director Defendants' respective breaches of fiduciary duties by ignoring a special meeting of the Board of Directors to remove Defendant Ludt from corporate office and otherwise entrenching him in corporate office despite his repeated breaches of his duties of care and loyalty to Horseco and its shareholders, thus breaching their respective duties of loyalty.  This entrenchment allowed the control of Horseco's funds and intellectual property to be transferred to Privato Group and Defendant Dixon to the detriment of the Company..

96.     As a direct and proximate result of the Director Defendants' respective breaches of their fiduciary duties, Horseco has been damaged in an amount exceeding $75,000.

## THIRD CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

97.     Plaintiff repeats the allegations contained in Paragraphs 1 to 96 of this Complaint as if fully set forth here.

98.      Pursuant to his Stock Option Agreement with Horseco, Defendant Ludt agreed "not to induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of [Horseco] to cease doing business with [Horseco], or interfere in any way material and adverse respect with the relationship between any such customer, supplier, licensee, licensor, franchisee or business relation and [Horseco]."

99.     Defendant Ludt breached the Stock Option Agreement by attempting to stop Horseco from doing business with Fasig-Tipton and breach the Company's ongoing statement of

work with Fasig-Tipton to pursue a business opportunity with Keeneland; interfering with the business relationships between and/or among Horseco, and potential relationships with Taylor Made Sales and Pfizer; and, interfering with the business relationship between Horseco and Mr. Midkiff, a significant customer, primary creditor, and one of the largest shareholders of Horseco.

100.    Pursuant to his Stock Option Agreement, Defendant Ludt further agreed not own directly or indirectly any interest in, manage, control, participate in, consult with, or render services for certain competing services.

101.    Defendant Ludt breached the Stock Option Agreement by joining Phoenix Thoroughbreds at its head of U.S. operations.

102.    Plaintiff has performed all of the conditions on its part to be performed under the terms of the Stock Option Agreement. The failures of Defendant Ludt constitute material breaches of the Stock Option Agreement.

103.    As a direct and proximate result of Defendant Ludt's breach of the Stock Option Agreement, Horseco has been damaged in an amount exceeding $75,000.

104.    As a direct and proximate result of Defendant Ludt's breaches of the Stock Option Agreement, The TLMJ Revocable Trust, a Horseco shareholder and third-party beneficiary of the Stock Option Agreement, has been damaged in an amount exceeding $75,000.

## THIRD CLAIM FOR RELIEF
## (RACKETEER INFLUENCED AND CORRUPT
## ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1961, ET. SEQ.)

105.    Plaintiff repeats the allegations contained in Paragraphs 1 to 104 of this

Complaint as if fully set forth here.

106.    This claim is brought by Plaintiff Midkiff, as trustee of The TLMJ Revocable

Trust, derivatively on behalf of Plaintiff Horseco, a "person" under 28 U.S.C. § 1964, and is

against the RICO Defendants.

107.    The transfer of Horseco operations to Privato Group and Defendant Dixon by

Defendants Ludt and LaMonica represent an enterprise (the "Privato Enterprise"), which is

engaged in and whose activities affect interstate commerce.  The RICO Defendants are employed

by or associated with the Privato Group.

108.    Each of the RICO Defendants agreed to and did conduct and participate in the

conduct of the Privato Enterprise's affairs through a pattern of racketeering activity for the

unlawful purpose of defrauding Plaintiff.  Specifically, the RICO Defendants engaged in a

pattern of representing to Horseco on multiple occasions that the RICO Defendants intended to

rectify Horseco's financial situation when, in reality, they had no such intent.

109.    Pursuant to and in furtherance of that fraudulent scheme, the RICO Defendants

committed multiple related acts of wire fraud and mail fraud, in violation of 18 U.S.C. §§ 1341

and 1343.  Specifically:

        1.    At the March 1, 2017 Board meeting, which was held telephonically, Defendant Ludt and LaMonica falsely stated to the Board of Directors that they were "developing a strategy" for the Company's to present to Board members at its next meeting.  In reality, Defendants Ludt and LaMonica

already were intending to and had begun transferring operations to Privato Group and Defendant Dixon without any intention of waiting on a presentation to the Board. This move had been planned for months.

2. In a telephone conversation on March 7, 2018, Defendant Dixon falsely told Mr. Plunkett, Horseco's Vice President for Product Strategy about his credentials, including the false implication that he is a certified public accountant.

3. In an email to Mr. Russell on March 8, 2017, Mr. Ludt falsely expressed his intent to "get this company healthy" with the "tech savvy, accounting driven" Privato Group, when in reality, Defendant Ludt has no intention of reviving Horseco's financial situation.

4. In a telephone conversation on March 12, 2017, Defendant Dixon falsely told Mr. Blankenship, Horseco's Vice President of Software Development, about Privato Group's experience in operating companies. This expertise was belied by his lack of plan to change payroll processing information, or ensure accurate and timely payment of health insurance, taxes, rent utilities, or processing of purchase payments.

110. These acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

111. The RICO Defendants have directly and indirectly conducted and participated in the conduct of the Privato Enterprise's affairs through this pattern of racketeering activity, in violation of 18 U.S.C. § 1961(c).

112. As a direct and proximate result of the RICO Defendants' racketeering activities and violations of 18 U.S.C. § 1961(c), Horseco has been injured in its business and property in that the Company has been deprived of its funds and intellectual property.

## FOURTH CLAIM FOR RELIEF
## (OHIO CORRUPT PRACTICES ACT, OHIO REV. CODE § 2923.31, ET SEQ.)

113.    Plaintiff repeats the allegations contained in Paragraphs 1 to 112 of this Complaint as if fully set forth here.

114.    This claim is brought by Plaintiff Midkiff, as trustee of The TLMJ Revocable Trust, derivatively on behalf of Plaintiff Horseco, a "person" under 28 U.S.C. § 1964, and is against the RICO Defendants.

115.    The transfer of Horseco operations to Privato Group and Defendant Dixon by Defendants Ludt and LaMonica represent an enterprise (the "Privato Enterprise"), which is engaged in and whose activities affect interstate commerce.  The RICO Defendants are employed by or associated with the Privato Group.

116.    Each of the RICO Defendants agreed to and did conduct and participate in the conduct of the Privato Enterprise's affairs through a pattern of racketeering activity for the unlawful purpose of defrauding Plaintiff.  Specifically, the RICO Defendants engaged in a pattern of representing to Horseco on multiple occasions that the RICO Defendants intended to rectify Horseco's financial situation when, in reality, they had no such intent.

117.    Pursuant to and in furtherance of that fraudulent scheme, the RICO Defendants committed multiple related acts of wire fraud and mail fraud, in violation of 18 U.S.C. §§ 1341 and 1343.  Specifically:

> 1.    At the March 1, 2017 Board meeting, which was held telephonically, Defendant Ludt and LaMonica falsely stated to the Board of Directors that they were "developing a strategy" for the Company's to present to Board members at its next meeting.  In reality, Defendants Ludt and LaMonica already were intending to and had begun transferring operations to Privato

39

Group and Defendant Dixon without any intention of waiting on a presentation to the Board. This move had been planned for months.

2. In a telephone conversation on March 7, 2018, Defendant Dixon falsely told Mr. Plunkett, Horseco's Vice President for Product Strategy about his credentials, including the false implication that he is a certified public accountant.

3. In an email to Mr. Russell on March 8, 2017, Mr. Ludt falsely expressed his intent to "get this company healthy" with the "tech savvy, accounting driven" Privato Group, when in reality, Defendant Ludt has no intention of reviving Horseco's financial situation.

4. In a telephone conversation on March 12, 2017, Defendant Dixon falsely told Mr. Blankenship, Horseco's Vice President of Software Development, about Privato Group's experience in operating companies. This expertise was belied by his lack of plan to change payroll processing information, or ensure accurate and timely payment of health insurance, taxes, utilities, rent, or processing of purchase payments.

118. These acts constitute a pattern of racketeering activity pursuant to Ohio Rev. Code § 2923.32(A)(2).

119. The RICO Defendants have directly and indirectly conducted and participated in the conduct of the Privato Enterprise's affairs through this pattern of racketeering activity, in violation of Ohio Rev. Code § 2923.32(A)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The TLMJ Revocable Trust, acting individually and derivatively on behalf of Plaintiff Horseco, Inc., respectfully requests that this Court grant the following relief:

A. Enter judgment in favor of Plaintiff Horseco for damages, including punitive damages, incurred as a result of the Director Defendants' breach of fiduciary duties and Defendant Keeneland's aiding and abetting of the Director Defendants' breach of fiduciary duties, and for costs and reasonable attorney fees.

B.      Enter preliminary and permanent injunctions that the Director Defendants be prohibited from further breaches of their fiduciary duties.

C.      Enter judgment in favor of Plaintiff Horseco for damages incurred as a result of Defendant Ludt's breach of the Stock Option Agreement.

D.      Enter Judgment in favor of Plaintiff TLMJ Revocable Trust for damages incurred as a result of Defendant Ludt's breach of the Stock Option Agreement.

E.      Enter Judgment in favor of Plaintiff Horseco for damages, including punitive damages and treble damages, and for costs and reasonable attorney fees.

F.      For such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

/s/ D. Jeffrey Ireland
D. Jeffrey Ireland (0010443)
    Trial Attorney
Erin E. Rhinehart (0078298)
Christopher C. Hollon (0086480)
FARUKI IRELAND COX
  RHINEHART & DUSING PLL
110 North Main Street, Suite 1600
Dayton, OH  45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3717
Email: djireland@ficlaw.com
         erhinehart@ficlaw.com
         chollon@ficlaw.cm

*Attorneys for Plaintiff Thomas Lee Midkiff, Jr., as Trustee of The TLMJ Revocable Trust*

## JURY DEMAND

Plaintiff demands a trial by jury on all claims triable to a jury.

/s/ D. Jeffrey Ireland
D. Jeffrey Ireland

## **VERIFICATION**

STATE OF OHIO

COUNTY OF WARREN


I, Thomas Lee Midkiff, Jr., am Trustee of The TLMJ Revocable Trust, the largest

shareholder of Horseco, Inc., and I certify on personal knowledge and belief that the allegations

made in this Verified Complaint are true to the best of my knowledge, information, and belief.


Thomas Lee Midkiff, Jr., as Trustee of The
TLMJ Revocable Trust


Sworn to before me and subscribed in my presence by Thomas Lee Midkiff, Jr.,

on this 19 day of March, 2018.


Notary Public

1259248.2

DEBORAH C. CAIN
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Warren County
My Comm. Exp. 9/24/19